IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLAISE HANCOCK, 78740-053, | § | |
| Petitioner, | § | |
| | § | 3:12-CV-4837-D |
| v. | § | 3:10-CR-0333-D |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

**I.  Procedural Background**

Pursuant to a plea agreement, Petitioner pled guilty to one count of conspiracy to commit mail fraud. On November 18, 2011, the Court sentenced him to 79 months in prison. Petitioner did not file an appeal.

On November 26, 2012, Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. On April 12, 2013, Petitioner filed an amended § 2255 petition. He argues:

1. The Court lacked jurisdiction to impose the sentence based on an invalid guilty plea;

2. He received ineffective assistance of counsel because counsel:

    (A) had a conflict of interest;

Page 1

    (B)  failed to conduct an adequate investigation;

    (C)  filed an uncorrected copy of the PSR with the Court;

    (D)  failed to impeach witness Sharon Whitaker;

    (E)  failed to use exonerating evidence in his favor;

    (F)  failed to raise his claims regarding restitution; and

  3.  Defense counsel and the government violated the Citizens Protection Act.

## II.  Factual Background

In early 2007, Petitioner and co-defendant Clint Allen met on an internet chat room. They devised a scheme to defraud and obtain money from Safeco Insurance Company ("Safeco"). On July 1, 2007, Petitioner purchased a house in Dallas, Texas and insured the house with Safeco. Petitioner insured the house in the amount of $811,000, which was far above the house's value. On October 14, 2007, Petitioner increased the policy amount to $861,000.

In December, 2007 the house was destroyed by a fire. Clint Allen later admitted he set fire to the house.

Between December 13, 2007 and September 21, 2009, Petitioner and Allen submitted fraudulent insurance claims on the property, with an intended loss of over $1.1 million.

In December, 2010 Petitioner, Allen and Allen's brother, Clay Allen, were named in a 15-count indictment alleging conspiracy to commit mail fraud, mail fraud, wire fraud and conspiracy to use fire to commit a felony. Pursuant to a plea agreement, Petitioner pled guilty to count one of the indictment which charged him with conspiracy to commit mail fraud. The Court sentenced him to 79 months in prison and ordered him to pay $294,983.01 in restitution.

**III. Discussion**

**1.     Guilty Plea/Jurisdiction**

Petitioner argues the Court lacked jurisdiction to impose his sentence because he was verbally promised a sentence range from home confinement to a maximum of six months incarceration, but the plea agreement and factual resume did not reflect this agreement. Petitioner states he made changes to the plea agreement and factual resume, but his edited version of these documents was not filed and/or his counsel falsified the documents. He also states his counsel threatened him into accepting the plea bargain. He states these claims render his guilty plea invalid.

A defendant's guilty plea must be made voluntarily, and the defendant must "make related waivers knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993).

Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of the guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "immediate and automatic consequences of that plea such as the maximum sentence length or

fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). Further, "[w]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed." *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) (*quoting United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994)).

In this case, the record shows that Petitioner knowingly and voluntarily entered his guilty plea. At the plea hearing, Petitioner stated he was provided a copy of the indictment, that he reviewed the indictment with his attorney, and that he understood the charges. (Plea Tr. at 5-6.) He also stated he read the plea agreement and supplement to the plea agreement, that he understood the agreement and that he had no changes or corrections to the agreement or supplement. (*Id*. at 7.) The Court informed Petitioner that his maximum term of imprisonment could be twenty years, and Petitioner stated he understood. (*Id*. at 11.) Petitioner stated he was not promised or guaranteed a certain sentence, that he understood the Court would decide his sentence, and he understood that if the Court imposed a sentence more severe than he expected he would have no right to withdraw his guilty plea. (*Id*. at 12-15.) Petitioner also stated he was satisfied with his attorney and his attorney's advice. (*Id*. at 6.)

Petitioner stated he reviewed the factual resume with his attorney and that he understood the factual resume. (*Id*. at 16.) Further, Petitioner stated the factual resume contained all of his changes. The record states:

> COURT: Do you have any changes or corrections to make to the factual resume?
>
> PETITIONER: Not anymore.

| | | |
|---|---|---|
| COURT: | | In other words, any changes that you needed made were actually – |
| PETITIONER: | | Were already made. |
| COURT: | | And as I understand it they were made in a prior version, so the clean copy I have now reflects all the changes you want made; is that correct? |
| PETITIONER: | | Yes, Your Honor. |

(*Id*. at 16.) Petitioner also stated the factual resume was true and correct, and he admitted he committed each essential element of the offense. (*Id*. at 18.) Finally, Petitioner stated no one had threatened or coerced him to plead guilty, and that he was pleading guilty because he was in fact guilty. (*Id*. at 7-8.) Petitioner has failed to show he did not knowingly and voluntarily enter his guilty plea. He has also failed to show that he did not agree with the terms of the factual resume, plea agreement and supplement to the plea agreement entered into the record, or that the Court lacked jurisdiction. These claims should be denied.

**2.      Ineffective Assistance of Counsel**

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would

have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

When a petitioner argues his guilty plea was not voluntary due to the ineffective assistance of counsel, he must show that his counsel's advice to plead guilty fell below the range of competence demanded of an attorney in a criminal case. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Further, he must show prejudice by establishing "but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial." *Armstead*, 37 F.3d at 206.

### A. Conflict of Interest

Petitioner claims his counsel was ineffective for failing to withdraw from representation due to a conflict of interest. He states his counsel should have been disqualified after joint defense meetings and after his codefendants agreed to cooperate with the government.

Under the Sixth Amendment, a defendant is entitled to representation that is "free from any conflict of interest." *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006). "[A] conflict will exist only when counsel is 'compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or conflicting interests of a former or current client.'" *United States v. Culverhouse*, 507 F.3d 888, 892 (5th Cir. 2007) (quoting *Garcia-Jasso*, 472 F.3d at 243).

In this case, Petitioner's counsel did not represent either of Petitioner's co-defendants.

Petitioner's counsel had no duty of loyalty to these co-defendants and Petitioner fails to identify any actual or perceived conflict. This claim should be denied.

### B. Investigation

Petitioner argues his counsel failed to consult with a fire expert, failed to argue that fire officials did not mark the residence as a crime scene and failed to argue that Safeco's investigation showed the fire was most likely an electrical fire. Petitioner appears to argue counsel's investigation would have showed the fire was not arson. Petitioner, however, admitted in his factual resume, and argued at sentencing, that Clint Allen intentionally caused the fire. (Factual Resume at ¶ 12; Sent. Tr. at 8-10.) Additionally, Petitioner has submitted no evidence that a fire expert would have testified favorably for the defense. *See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony justify will not the issuance of a writ . . . ."). Further, agent Whitaker testified at sentencing that the fire was treated as an arson investigation from the beginning. (Sent. Tr. at 19-10.) Safeco's investigation also determined the fire was arson, with multiple points of origin. (PSR ¶ 29.) Petitioner's claims should be denied.

### C. Factual Resume

Petitioner claims his counsel was ineffective because counsel did not file Petitioner's corrected factual resume, but instead filed the original factual resume. As discussed above, Petitioner confirmed in open court that the submitted factual resume contained all of his changes and corrections. Petitioner's claim is without merit and should be denied.

### D. Arson and Loss Amount

Petitioner argues his counsel was ineffective for failing to impeach agent Sharon

Whitaker and failing to use exonerating evidence in his favor. He states counsel failed to rebut Whitaker's claims that he was involved in the arson and failed to submit evidence that the loss amount was incorrectly calculated.

At sentencing, defense counsel extensively cross-examined Whitaker and counsel also argued that Petitioner was not involved in, or aware of, the arson. (Sent. Tr. at 34-45.) Agent Whitaker stated she understood Petitioner's claim he was not involved in the arson, but she did not believe his claim. (*Id*. at 37.) Defense counsel also challenged Whitaker regarding the loss amount, filed objections to the PSR regarding the loss amount, and argued at sentencing that Petitioner was not involved in the arson and the loss amount was inaccurate. (*Id*. at 44-45, 49.) Petitioner's claim is without merit and should be denied.

### E. Restitution

Petitioner argues counsel failed to demand a separate restitution hearing, allowed him to sign a plea agreement that waived his state court claims, and insisted that he sign a plea agreement that waived his right to personal property stolen prior to, and in the days after, the fire. These claims do not challenge Petitioner's custody and are not cognizable under § 2255. *See United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994) (stating that claim of ineffective assistance of counsel relating to imposition of a fine is not cognizable under § 2255).

### 3. Citizens Protection Act

On September 12, 2013, Petitioner filed a brief arguing his counsel and Respondent violated the Citizens Protection Act, 28 U.S.C. § 530B. That Act states: "An attorney for the government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent

and in the same manner as other attorneys in that State." This newly raised claim appears time-barred. Additionally Petitioner has failed to show his counsel or the government violated this Act, and that any such violation would provide a basis for vacating his conviction or sentence. This claim is without merit and should be denied.

## **RECOMMENDATION**

For the foregoing reasons, the Court recommends that Petitioner's motion to correct, vacate or set-aside sentence pursuant to 28 U.S.C. § 2255 be denied.

Signed this 22nd day of October, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).